J. S14014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                :          PENNSYLVANIA
                  v.                      :
                                                  :
HEATH I. HIBSHMAN,                  :          No. 1203 MDA 2015
                                                  :
               Appellant           : 

Appeal from the Judgment of Sentence, January 28, 2015,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0000049-2014

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MARCH 15, 2016**

Heath I. Hibshman ("Appellant") appeals the judgment of sentence of the Court of Common Pleas of Lebanon County that sentenced him to a term of 4 to 23 months in the Lebanon County Correctional Facility, fined him $100, and ordered him to make restitution to Jeffrey Kalina ("Kalina") in the amount of $220 for theft by unlawful taking or disposition.[1]

Appellant worked at a rooming house known as the 9th Street Personal Care Facility ("Facility"). Timothy Schaeffer ("Schaeffer") and Kalina gave money to Appellant to store for them for safekeeping. Schaeffer gave Appellant $85, and Kalina gave him $320. Although Appellant returned a

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3921(a).

portion of the money, he did not return all of it. When Kalina asked for the money, it was not returned to him. David Sanders ("Sanders"), the owner of the Facility, investigated. Appellant admitted to him that he had taken the money and asked for time to pay it back. When Appellant did not return the money, Sanders contacted the Lebanon City Police Department. Patrolman First Class Officer Patrick John McKinney, Jr. ("Officer McKinney") investigated. Appellant was charged with theft by unlawful taking.

On December 4, 2014, the trial court conducted a trial in the matter. Kalina testified that he gave Appellant $320, which was the proceeds of a social security rent rebate check, for safekeeping to put in a locked cabinet at the Facility. (Notes of testimony, 12/4/14 at 5-6.) On four separate occasions, Kalina requested and received $20 from the $320. When he did so, he observed Appellant take the money out of the locked cabinet. In the beginning of September 2013, Kalina asked Appellant for $20 but was told he would have to go to the York Street Personal Care Facility ("York") to get it. (*Id.* at 6-7.) Kalina called York and inquired whether his money was there. Adrian Lancer, an employee of York, told him that it was not. (*Id.* at 7-8.)[2]

Sanders testified that he operated both the Facility and York. (*Id.* at 16.) Sanders explained that Appellant essentially managed the Facility, that

---

[2] The parties stipulated that Schaeffer gave money to Hibshman to put in the locked cabinet at the Facility. They did not stipulate as to the amount. (*Id.* at 15-16.)

Schaeffer had "severe mental retardation," and that Kalina had mental and physical issues. (*Id.* at 17-18.) Kalina contacted him in September 2013 and asked if Sanders had any of his money in a safe at York. When Sanders investigated at the Facility, he found two empty envelopes inside the locked medicine cabinet. One envelope had Kalina's name on it and one had Schaeffer's. Amounts were deducted on the outside of the envelopes. According to Sanders, the amount listed on one envelope was $240 and the amount listed on the other was $85. (*Id.* at 18-19.) When Sanders confronted Appellant about the missing funds, Appellant replied, "I'll pay it back." (*Id.* at 22.) According to Sanders, Appellant acknowledged taking the money and volunteered to pay it back in a week. (*Id.* at 23.) When questioned as to why he allowed Appellant time to pay the money back, Sanders answered, "Well he just got out of jail." (*Id.*)

At that point, Appellant's counsel moved for a mistrial because of the testimony concerning Appellant's prior jail time. The Commonwealth's attorney informed the trial court that she had specifically instructed Sanders not to mention Appellant's incarceration when he testified. (*Id.* at 24.) The trial court denied the motion for a mistrial. (*Id.* at 26.)

When the jury returned to the courtroom, the trial court issued this instruction:

> Ladies and gentlemen, immediately before the recess the witness was asked a question about why he did something. And not in response to that question, he referenced something about the fact that [Appellant]

may have been incarcerated previously. That was improper. And as I understand it, the prosecutor advised the witness not to make any such statements and the witness did so anyway. I think he forgot about the prosecutor's admonition.

It is not relevant whether a Defendant has any type of prior criminal record. The reality is he is charged today with Theft. The reality is that you must make a decision today about whether he committed that Theft. Whether or not he did something in the past is not any evidence of whether he committed this Theft, it's not. And I don't think any of us would like to have our present conduct judged based upon something that may have happened years ago. Especially since in this particular case we don't know what it was. It could have been an unpaid parking ticket for all we know.

It was improper for you to hear that [Appellant] was in prison previously. You cannot consider that. It is not any evidence at all in this case. It is not anything you can consider with respect to [Appellant's] believability. It is not something that is anyway part of this case. And I am instructing you to ignore what was blurted out. I am instructing you to forget about it. And I am specifically instructing you not to consider it and not to allow your fellow jurors to even mention it in your deliberations. If any one of your fellow jurors mentions it during deliberations, report it to me. I'm instructing each of you not to mention it or not to think about it or not even to consider it.

Here's the reality, I'll say it again. [Appellant] is charged with Theft as a result of something that occurred in September of 2013. You took an oath to decide whether [Appellant] is guilty or not guilty of that Theft. And the decision that you have to make must be based upon the facts and circumstances that occurred in September of 2013 at or near the time the alleged Theft occurred. That's what your oath requires you to do. I'm going to be holding you to that oath.

*Id.* at 28-29.

Sanders testified that Appellant did not pay the money back as promised. Sanders did not authorize Appellant to take the money. Further, neither Kalina nor Schaeffer did either. (***Id.*** at 32.) Sanders paid Kalina and Schaeffer the amounts taken by Appellant. (***Id.*** at 53.)

Officer McKinney testified that he responded to a report of a theft and met with Sanders at the Facility on September 30, 2013. Officer McKinney contacted Appellant who admitted to taking the money and said he would pay it back. Officer McKinney waited to charge Appellant with theft by unlawful taking until November 2013, in order to give Appellant a chance to pay the money back. (***Id.*** at 65-68.)

The jury returned a guilty verdict. When the trial court questioned whether the jurors considered the fact that Appellant had previously been in jail during their deliberations, no juror raised his or her hand to say they had. (***Id.*** at 85.) The trial court sentenced Appellant to pay the costs of prosecution, pay a fine of $100, pay restitution to Kalina in the amount of $220, and to serve 4 to 23 months[3] in the Lebanon County Correctional Facility.

In his post-sentence motions, Appellant moved for acquittal on the basis that the Commonwealth failed to present sufficient evidence to prove

---

[3] The trial court granted Hibshman's application for parole on May 14, 2015. Hibshman was to be paroled on May 28, 2015.

beyond a reasonable doubt that he was guilty. Appellant also moved for a new trial on the bases that the trial court erred when it denied his motion for a mistrial, because of Sanders' testimony that he was previously incarcerated, and that the jury's verdict of guilty was against the weight of the evidence, because the jury placed too great a weight on the testimony of the Commonwealth's witnesses.

On June 1, 2015, the trial court denied the post-trial motions. The trial court explained with respect to the weight and sufficiency of the evidence:

> In this case, the evidence linking [Appellant] to the theft of money from Timothy Schaeffer and Jeffrey Kalina was extensive. [Appellant] had access to the funds that ended up missing. The Commonwealth also established that when [Appellant's] boss confronted [Appellant] with the fact that money was missing[,] [Appellant] admitted that he had taken the money and stated, "I will pay it back." (N.T. 23, 30, 31). Moreover, when Officer McKinney investigated the theft and spoke with [Appellant], [Appellant] admitted that he had taken the money. (N.T. 67). Given the above, we have a hard time perceiving how [Appellant] can even claim that the jury's verdict was not founded on sufficient evidence or that it was against the weight of the evidence.

Trial court opinion, 6/16/15 at 10.

With respect to the mistrial issue, the trial court stated:

> In this case, witness Sanders' reference to [Appellant's] incarceration was not intentionally elicited by the Commonwealth. It was fleeting. The Commonwealth did not attempt to exploit the information. No details about [Appellant's] prior

crime were communicated to the jury. Almost immediately thereafter, the Court instructed the jury that they could not consider that incarceration in any way. Given the totality of the situation, this Court did not err by denying [Appellant's] Motion for Mistrial.

*Id.* at 14.

Appellant raises the following issues for this Court's review:

I. Did the Commonwealth fail to prove beyond a reasonable doubt that [Appellant] was the person who took the money, or alternatively that [Appellant] did not have authorization to use the money?

II. Did the jury place too great a weight on the testimony presented by the Commonwealth's witnesses that [Appellant] took the money and/or did not have authorization to use the money?

III. Did the Trial Court err by denying [Appellant's] motion for a mistrial because the testimony of David Sanders that he allowed [Appellant] time to pay the money back because [Appellant] just got out of jail was highly prejudicial and the limiting instruction provided by the Trial Court did not adequately eliminate the prejudice caused by David Sander's [sic] testimony?

Appellant's brief at 4.

Initially, Appellant contends that the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant was the person who took the money and/or that Appellant did not have authorization to use the money.

A claim challenging the sufficiency of the evidence is a question of law. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). In that case, our Supreme Court set forth the sufficiency of the evidence standard:

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. **Commonwealth v. Karkaria**, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. **Commonwealth v. Santana**, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Chambers**, 528 Pa. 558, 599 A.2d 630 (1991).

**Id.** at 319, 744 A.2d at 751.

**Commonwealth v. Morgan**, 913 A.2d 906, 910 (Pa.Super. 2006).

A person is guilty of theft by unlawful taking or disposition if "he unlawfully takes, or exercises control over movable property of another with the intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

Appellant argues that the Commonwealth failed to present sufficient evidence that he stole the money because Sanders also had access to the locked cabinet where the money was kept, so Sanders could have taken the

money. Also, Appellant argues that he had authority to use the money because it was common practice to use the residents' money to purchase household necessities for the boarding house.

Appellant ignores the fact that while Sanders may have had access to the money, Sanders testified that Appellant admitted to Sanders that he took the money when Sanders confronted him about it. Similarly, Appellant admitted to Officer McKinney that he took the money when Officer McKinney questioned him. With respect to whether Appellant was authorized to use the money to buy household items, Sanders testified that he did not have authorization.

The testimony of Sanders and Officer McKinney, that Appellant told them that he took the money, coupled with the testimony of Sanders, that Appellant was not authorized to do so, provided sufficient evidence for the conviction.

Appellant next contends that the jury placed too great a weight on the Commonwealth's witnesses, such that he is entitled to a new trial.

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is

> not to consider the underlying question of whether the verdict is against the weight of the evidence, . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> ***Commonwealth v. Kim***, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. ***Commonwealth v. Davis***, 799 A.2d 860, 865 (Pa.Super. 2002).

***Commonwealth v. Jarowecki***, 923 A.2d 425, 433 (Pa.Super. 2007).

Appellant argues that the jury placed too much weight on the testimony of Sanders given that Sanders had access to the locked cabinet and did not report to the police that the money was missing for three weeks.

We agree with the trial court that the jury's decision does not shock the conscience. Kalina testified that he gave the money to Appellant to hold for him and that Appellant failed to return it when asked. Sanders and Officer McKinney both testified that Appellant admitted that he took the money. The jury found Kalina, Sanders, and Officer McKinney credible. The trial court did not err when it determined Appellant was not entitled to a new trial because the jury's verdict was against the weight of the evidence.

Appellant next contends that the trial court abused its discretion when it denied his motion for a mistrial when Sanders testified that he allowed Appellant time to pay the money back because Appellant had recently gotten out of jail.

The standard governing our review of a trial court's refusal to grant a request for a mistrial has been previously well summarized by this Court:

The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a "flagrant abuse of discretion." *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 997 (1992); *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 570, 609 A.2d 1368, 1370-71 (1992). A mistrial is an "extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Vazquez*, 421 Pa.Super. 184, 617 A.2d 786, 787-88 (1992) (citing *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986), and *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984)). A trial court may remove taint caused by improper testimony through curative instructions. *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309, 312-13; *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. *Richardson*, 496 Pa. at 526-527, 437 A.2d at 1165. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate. *Id.*

> ***Commonwealth v. Stilley***, 455 Pa.Super. 543, 689
> A.2d 242, 250 (1997).

***Commonwealth v. Bracey***, 831 A.2d 678, 682-683 (Pa.Super. 2003),

***appeal denied***, 844 A.2d 551 (Pa. 2004).

Appellant asserts that Sanders' testimony, that he allowed Appellant time to pay the money back because Appellant "just got out of jail," warranted a new trial. (Notes of testimony, 12/4/14 at 23.) Although the trial court gave a curative instruction to the jury, Appellant argues that this instruction was insufficient to cure the taint of the testimony.

The prosecutor told the trial court that when she asked Sanders the same question during pre-trial preparation, he did not mention anything about Appellant's incarceration and that she instructed Sanders not to mention anything concerning the incarceration. The trial court gave the jury a lengthy instruction that informed it that whether or not Appellant committed a crime in the past was not evidence as to whether he committed the theft for which he was on trial. The trial court emphatically told the jury that it was not permitted to consider that testimony. After the jury returned the verdict, the trial court checked to make sure whether anyone mentioned Appellant's prior incarceration during the jury's deliberations. No one had. We are satisfied that the trial court correctly determined that the Commonwealth did not intentionally elicit this testimony and that the trial court's curative instruction cured any possible taint. The trial court did not abuse its discretion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2016